**Norton Rose Fulbright US LLP**
Richard S. Krumholz (admitted *pro hac vice*)
richard.krumholz@nortonrosefulbright.com
James V. Leito IV (admitted *pro hac vice*)
james.leito@nortonrosefulbright.com
Veronica Portillo Kendrick (admitted *pro hac vice*)
veronica.kendrick@nortonrosefulbright.com
Grey Giddens (admitted *pro hac vice*)
grey.giddens@nortonrosefulbright.com
Mary Katherine Nix (admitted *pro hac vice*)
marykatherine.nix@nortonrosefulbright.com
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201-7932
Telephone:    (214) 855-8000
Facsimile:    (214) 855-8200

**Osborn Maledon, P.A.**
James D. Smith (Arizona Bar No. 016760)
jsmith@omlaw.com
Molly Walker (Arizona Bar No. 038099)
mwalker@omlaw.com
2929 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:    (602) 640-9000
Facsimile:    (602) 640-9050

*Attorneys for Defendant
Para, Inc. d/b/a GigSafe; and David Pickerell*

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Contractor Management Services, LLC d/b/a Openforce, | Case No. 2:25-cv-01645-DWL |
| Plaintiff, | |
| v. | |
| Para, Inc. d/b/a GigSafe; and David Pickerell, | **DAVID PICKERELL'S MOTION TO DISMISS UNDER RULES 12(B)(2), 9(B), AND 12(B)(6); AND MEMORANDUM IN SUPPORT** |
| Defendants. | |

NORTON ROSE FULBRIGHT
US LLP

Attorneys at Law

**Table of Contents**

Page

I. INTRODUCTION ................................................................................................... 1

II. ALLEGATIONS ..................................................................................................... 2

III. LEGAL STANDARDS ........................................................................................... 3

IV. ARGUMENTS & AUTHORITIES ......................................................................... 4

    A.  There is no general personal jurisdiction over Pickerell because he is not domiciled in Arizona. ................................................................................... 4

    B.  There is no specific personal jurisdiction over Pickerell. ........................... 5

        1.  Pickerell did not purposefully direct activities to Arizona or avail himself of its laws. ....................................................................... 5

        2.  The seven causes of action against Pickerell do not arise from or relate to any contacts between Pickerell and Arizona. ........................ 10

            a.  Misappropriation Under and Violation of Defend Trade Secrets Act and the Arizona Uniform Trade Secrets Act (Counts I and II) and Unfair Competition (Count VIII) ................................................ 11

            b.  Tortious Interference with Contract and Business Expectancy and Unjust Enrichment (Counts III, IV, and IX) .................................. 12

            c.  Fraudulent Inducement of a Contract (Count VI) ................................. 13

        3.  The exercise of personal jurisdiction over Pickerell is unreasonable. ............. 13

V. CONCLUSION ..................................................................................................... 16

Pursuant to Federal Rule of Civil Procedure 12(b)(2), Defendant David Pickerell ("Pickerell") respectfully submits this motion to dismiss all claims against him for lack of personal jurisdiction. Pickerell further moves to dismiss the claims against him under Rules 9(b) and 12(b)(6) for failure to state a claim for the reasons set forth in the Motion to Dismiss filed by Defendant Para, Inc. d/b/a GigSafe ("GigSafe"), which is incorporated herein by reference.

## I. INTRODUCTION

Pickerell is a Texas resident who attended a single meeting in Arizona with Plaintiff Contractor Management Services, LLC d/b/a Openforce ("Openforce"). Yet Openforce seeks to subject him to the jurisdiction of this Court through bare bones allegations that fall short of the jurisdiction requirements under Arizona's long-arm statute and federal due-process law.

The core of Openforce's allegations arise out of alleged unauthorized access to Openforce's systems by GigSafe employees (though not Pickerell) during 2024. Openforce does not allege that this purported access in 2024 is in any way connected with Arizona. Indeed, the only conduct in the Complaint that is tied to Arizona is a single meeting with Openforce that occurred in October 2023 and was attended by Pickerell, who was (and remains) GigSafe's CEO.

Openforce attempts to create personal jurisdiction by baldly alleging that some sort of plan to access the systems was conceived in connection with that single 2023 meeting. Openforce does not allege that Pickerell used any of the information allegedly shared at the meeting to access Openforce's systems. Nor does Openforce plausibly explain how the nontechnical information allegedly provided at the meeting—business plans, growth strategies, insurance information, and revenue models—could have been used to access Openforce's systems. And even if it did, allegations arising from a single meeting would be insufficient to establish that Pickerell either purposefully directed his activities at Arizona or that the claims against him arise out of contacts with the state. Despite Openforce's painstaking focus on the October 2023 meeting (undoubtedly to somehow

link Arizona to this case), all of the supposedly inappropriate access to Openforce's systems occurred independent of that meeting and no allegations plausibly suggest that information at that meeting was used to gain access to the systems in question. Stated differently, under Openforce's own theory of the case, every cause of action against Pickerell would have arisen regardless of whether (or where) the October 2023 meeting took place. And none of the alleged tortious conduct suggests that Pickerell (or GigSafe for that matter) expressly aimed such conduct at Arizona, "as opposed to whatever state happened to surround [Openforce's] headquarters." *E3 Innovation Inc. v. DCL Techs. Inc.*, 2021 WL 5741442, at *9 (D. Ariz. Dec. 2, 2021).

Openforce further attempts to establish jurisdiction through (a) a non-disclosure agreement with GigSafe (not Pickerell) and (b) its own contacts with Arizona. Pickerell is not a party to the non-disclosure agreement (there is no claim against him for breach of the agreement) and, of course, a plaintiff's own contacts with the forum-state are irrelevant to the issue of personal jurisdiction over a defendant.

Pickerell thus respectfully moves this Court for an order of dismissal for lack of personal jurisdiction under Rule 12(b)(2).

## II. ALLEGATIONS

Openforce is a Nevada limited liability company with its principal place of business in Scottsdale, Arizona. Doc. 1 ¶ 8. Pickerell is an individual who resides in Austin, Texas. *Id.* ¶ 8.

Openforce operates software that allows companies to manage their independent-contractor vendor relationships. *Id.* ¶ 13. Openforce contends that GigSafe and Pickerell "hacked into Openforce's systems, pilfered Openforce's trade secrets, and used that information to steal Openforce's customers." *Id.* ¶ 1.

Openforce asserts that the genesis of this alleged conduct is a September 2023 Mutual Non-Disclosure Agreement ("MNDA") between Openforce and GigSafe, and a subsequent October 2023 meeting in Arizona between Openforce and GigSafe (including

2

Pickerell). *Id.* ¶ 12. This single meeting is the sole allegation in the Complaint tying Defendants to any conduct, transaction, or connection to Arizona. The rest of Openforce's allegations focus on Pickerell's alleged tortious conduct that occurred outside of Arizona or without reference to a geographic location.

Openforce alleges the following causes of action against Pickerell and GigSafe, each of which are discussed in more detail below:

- Misappropriation Under and Violation of Defend Trade Secrets Act (Count I),
- Misappropriation Under and Violation of the Arizona Uniform Trade Secrets Act (Count II),
- Tortious Interference with Contract (Count III),
- Tortious Interference with Business Expectancy (Count IV),
- Fraudulent Inducement of a Contract (Count VI),
- Unfair Competition (Count VIII), and
- Unjust Enrichment (Count IX).

Openforce further alleges the following causes of action against GigSafe only: Fraudulent Misrepresentation (Count V) and Breach of Contract (Count VII).

### III. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(2) compels dismissal of claims against a defendant if the court does not have personal jurisdiction over that defendant. "[T]he plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). To do so, the plaintiff must make a *prima facie* showing of jurisdictional facts. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The plaintiff "cannot simply rest on . . . bare allegations . . . [in] its complaint." *Id.* Where "no federal statute governs personal jurisdiction, the district court applies the law of the forum state," in this case, Arizona. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).

NORTON ROSE FULBRIGHT
US LLP
Attorneys at Law

## IV. ARGUMENTS & AUTHORITIES

Arizona's long-arm statute is co-extensive with the limits of federal due process. *Hill-Rom Servs. Inc. v. Convergence Sys. Ltd.*, 2019 WL 5684198, at *2 (D. Ariz. Nov. 1, 2019); *see also* Ariz. R. Civ. P. 4.2(a). Accordingly, a federal court may exercise personal jurisdiction over Pickerell only if doing so comports with federal constitutional due process. *Boshcetto*, 539 F.3d at 1015. "Due process requires that nonresident defendants have certain minimum contacts with the forum state, so that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice." *Doe v. Am. Nat'l Red Cross*, 112 F.3d 1048, 1050 (9th Cir. 1997). Minimum contacts can give rise to either general or specific jurisdiction. *Boshcetto*, 539 F.3d at 1015. Here, neither general nor specific jurisdiction exists over Pickerell.

### A. There is no general personal jurisdiction over Pickerell because he is not domiciled in Arizona.

General jurisdiction exists only "when the defendant's contacts with the forum state are so continuous and systematic as to render the defendant essentially at home in that forum." *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 602 n.2 (9th Cir. 2018) (cleaned up). The question then, is whether the defendant's contacts "approximate physical presence in the forum state." *Wells Fargo Bank NA v. Wyo Tech Inv. Grp. LLC*, 385 F. Supp. 3d 863, 875 (D. Ariz. 2019) (quoting *Schwarzenegger*, 374 F.3d at 801). "[T]he paradigm forum for the exercise of general jurisdiction" over an individual is "the individual's domicile." *Id.* at 876. (holding no general jurisdiction because individual defendant was not domiciled in Arizona and conducting business meetings within Arizona cannot be said to approximate physical presence in Arizona) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).

Openforce does not attempt to invoke general jurisdiction over Pickerell. It does not allege that Pickerell is domiciled in Arizona and instead alleges that Pickerell is a resident of Austin, Texas. Doc. 1 ¶ 10. Because Pickerell's domicile is not Arizona and

4

NORTON ROSE FULBRIGHT
US LLP
Attorneys at Law

conducting business meetings in Arizona does not approximate physical presence, this Court lacks general jurisdiction over Pickerell. *See Wells Fargo Bank NA*, 385 F. Supp. 3d at 875–76.

**B.    There is no specific personal jurisdiction over Pickerell.**

The Ninth Circuit applies a three-part test to determine whether to exercise specific jurisdiction over a nonresident defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Boshcetto*, 539 F.3d at 1016. "The plaintiff bears the burden of satisfying the first two prongs of the test." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017). If the plaintiff does so, the burden shifts to defendant to show that the exercise of jurisdiction would not be reasonable. *Id.* But if the plaintiff fails to satisfy either of the first two prongs, "personal jurisdiction is not established in the forum state." *Id.* Openforce does not sufficiently allege jurisdictional facts to satisfy either prong, warranting dismissal. But even if Openforce had done so, jurisdiction is not reasonable here.

**1.    Pickerell did not purposefully direct activities to Arizona or avail himself of its laws.**

A plaintiff asserting specific jurisdiction first bears the burden of establishing that the out-of-state defendant purposefully directed its activities toward the forum state or availed himself of the forum's protections and laws. *Boshcetto*, 539 F.3d at 1016. Where the plaintiff fails to establish purposeful availment or direction, "the jurisdictional inquiry ends and the case must be dismissed," without the need to address whether the alleged causes of action arise from the defendant's forum-related contacts. *Id.*

This first prong of the specific jurisdiction test is divided into two concepts,

5

depending on the underlying claims: purposeful direction and purposeful availment. *Schwarzenegger*, 374 F.3d at 802. Courts generally focus the inquiry on "purposeful availment when the underlying claims sound in contract and on purposeful direction when they arise from alleged tortious conduct committed outside the forum." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021). Where a plaintiff only asserts tort claims against the defendant, as is true here, the purposeful direction test applies. *Hill-Rom*, 2019 WL 5684198, at *7; *see also Gigacloud Tech., Inc. v. Linon Home Decor Prods., Inc.*, 2025 WL 656653, at *3 (C.D. Cal. Feb. 20, 2025) ("A purposeful direction analysis . . . is most often used in suits sounding in tort such as Plaintiffs' misappropriation of trade secrets claim." (cleaned up)).

Purposeful direction requires the defendant to "(1) commit[] an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). The defendant's action must "establish a direct link between the defendant and the forum state." *A.I.I.L. v. Sessions*, 2022 WL 997276, at *5 (D. Ariz. Mar. 31, 2022). The proper question "is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at *6.; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) ("[T]he relationship must arise out of contacts that the defendant himself creates with the forum State."). Thus, the court must "focus on the defendant's contacts with the forum state, not the defendant's contacts with a resident of the forum." *E3 Innovation*, 2021 WL 5741442, at *7 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). Notably, "the plaintiff cannot be the only link between the defendant and the forum." *Id.* As applied here, these bedrock jurisdictional principles establish that Openforce has failed to allege that Pickerell expressly aimed his conduct at Arizona.

*E3 Innovation* is particularly instructive here. In that case, an Arizona-based company accused the defendant of "pillaging [its] customers and suppliers and using [its]

6

confidential information . . . to gain unfair competitive advantage and leverage." *Id.* at *2. Even though the defendant had (a) visited the plaintiff's Arizona headquarters on twelve occasions over a two-year period, and (b) allegedly attended a meeting in Arizona where he misrepresented that he was acting in the company's best interest but was instead working to steal the plaintiff's confidential information, the court held there was no personal jurisdiction. *Id.* at *3, 7. The court concluded that "it is irrelevant for 'express aiming' purposes that [defendant's] contractor relationship was negotiated in Arizona, that the confidential information was developed in Arizona and used to fulfill customer orders through Arizona channels, or that [defendant] received access to the information via permissions granted by [plaintiff's] Arizona office" because "those facts are inextricably bound up with [plaintiff's] location in Arizona." *Id.* Accordingly, the plaintiff did not meet its burden of establishing purposeful direction, warranting dismissal. *Id.* at *10.

Openforce's Complaint suffers the same defect. Openforce's conclusory allegations attempting to tie Defendants to Arizona impermissibly focus on *Openforce's* connections to Arizona, not Pickerell's or Gigsafe's connections. In particular, in the portion of its Complaint concerning "Venue and Jurisdiction" (*see* Doc. 1 ¶ 12), Openforce identifies several "events and omissions in this District":

- "Mr. Pickerell directing Para to enter into, and Para entering into, a Mutual Non-Disclosure Agreement ("MNDA") with Openforce, *a company with its principal place of business in this District* . . . ."

- "Defendants' actions to . . . [] misappropriate the confidential and trade secret information of Openforce, *a company with its principal place of business in this District*, including by soliciting this information at the October 2023 meeting with Openforce that took place in this District . . . ."

- "breach [of] the Arizona-based MNDA."

7

- Pickerell's actions to "tortiously interfere with and unfairly compete for business from Openforce's customers, who do business in this District . . . ."
- "Misrepresenting their true intentions and identities to access the systems of Openforce, *a company with its principal place of business in this District* . . . ."
- "Fraudulently inducing Openforce to enter into the MNDA with Para and to share trade secrets and other confidential information pursuant to the MNDA at a meeting in Scottsdale, Arizona . . . ."

Doc. 1 ¶ 12. None of the alleged tortious conduct suggests that Pickerell or Gigsafe expressly aimed such conduct at Arizona, "as opposed to whatever state happened to surround [Openforce's] headquarters." *E3 Innovation*, 2021 WL 5741442, at *9.

First, turning to the various allegations related to the execution of the MNDA, Openforce does not allege that the MNDA (which was not signed by Pickerell) was executed in Arizona. Nor does it allege that the misrepresentations purportedly made by Defendants to fraudulently induce Openforce to enter into the MNDA were made in Arizona. Again, the only tie between Defendants and Arizona is the single meeting at Openforce's headquarters *after* the MNDA was executed. Pickerell presumably would have attended the meeting wherever Openforce's office happened to be, and Openforce certainly has not alleged any reasons for why the meeting had to be in Arizona. All other alleged tortious conduct—whether before or after the execution of the MNDA—occurred outside of Arizona or without reference to a geographic location. The allegations related to execution of the MNDA are therefore insufficient to establish personal jurisdiction. *See Verbick v. The Movement Tech. Co., Inc.*, 2023 WL 11691697, at *5 (S.D. Cal. Dec. 13, 2023) (finding no "express aiming" where parties met in person at a single meeting in the forum related to the contract at issue but conducted all other negotiations outside the forum).

Second, Openforce does not allege any facts tying the confidential and trade secret information supposedly shared at the Arizona meeting to Pickerell's conduct following

the meeting. Defendants' alleged conduct relates to the claimed unauthorized access of Openforce's system by GigSafe employees through customer accounts with customer-specific activation codes. *See, e.g.*, Doc. 1 ¶ 22 ("Openforce uses a unique, customer-specific activation code that Openforce provides to each of its customers to restrict the ability of a real independent contractor to access" the platform); *id.* ¶ 25 ("Openforce restricts access to its on-boarding and enrollment platform . . . . Openforce achieves this protection by limiting access to the enrollment platform to those with a customer-specific activation code."); *id.* ¶ 38 ("GigSafe . . . then took the next step in their plan, entering customer activation codes and going through the enrollment process and accessing the Openforce systems for [10] Openforce customers.").

The Complaint makes no connection between the use of customer activation codes and the Arizona meeting. Openforce does not allege, for example, that it provided activation codes at the Arizona meeting that were later misused, or that the need for an activation code is nonpublic information that was divulged in the Arizona meeting—neither of which would be sufficient for jurisdictional purposes in any event, but each of which would at least attempt to connect the unauthorized access at the core of the Complaint to the Arizona meeting.[1] Nor does Openforce attempt to explain how the information provided at the meeting—"business plans, growth strategies, insurance information, and its revenue models" (*id.* ¶ 32)—could have been used or were used to access Openforce systems.

Third, the fact that Openforce has customers in Arizona is insufficient to establish

---

[1] As shown in the screenshots included in GigSafe's Motion to Dismiss, the need for activation codes to access the website is public information published online. *See, e.g.*, https://oforce.zendesk.com/hc/en-us/articles/21946383064859-What-is-an-Activation-Code; *see also* https://api-guide.oforce.com/reference/invitations-1 ("To get a contractor in to the system, they must be invited. . . . First, you will need a valid activation code. You will need to reach out to our implementation team to get this."). The Court may consider publicly available information from Openforce's system because the system is referenced throughout the Complaint. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *Warren v. Penzone*, 2024 WL 2246257 at *6 (D. Ariz. May 17, 2024).

9

express aiming, especially given that there are no allegations that Defendants had contact with any customers in Arizona. *See Dinar Corp. Inc. v. Sterling Currency Group, LLC*, 2014 WL 4072023, at *5 (D. Nev. Aug. 15, 2014) (finding alleged tortious activity not expressly aimed at Nevada where the conduct was equally aimed at potential customers in all 50 states, even though plaintiff had higher concentration of customers in Nevada). Openforce cannot show that Pickerell expressly aimed his conduct at Arizona.

Finally, Pickerell is not a party to (and did not execute) the MNDA and, unsurprisingly, has not been sued for breach of the MNDA. Openforce cannot therefore use breach of the MNDA as a basis for jurisdiction over him. Doc. 1 ¶ 99.

Accordingly, this Court should grant Pickerell's motion to dismiss.

**2.    The seven causes of action against Pickerell do not arise from or relate to any contacts between Pickerell and Arizona.**

Openforce also cannot satisfy the second prong of the specific-jurisdiction test— i.e., that "'but for' the contacts between the defendant and the forum state, the cause of action would not have arisen." *Hill-Rom*, 2019 WL 5684198, at *5 (quoting *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 561 (9th Cir. 1995)). Each of the seven causes of action alleged against Pickerell are discussed, in turn, below, but they all suffer from the same defect: Despite Openforce's painstaking focus on the October 2023 meeting (undoubtedly to somehow link Arizona to this case), all of the supposedly inappropriate access to Openforce's systems occurred independent of that meeting and no allegations even suggest that information at that meeting was used to gain the access to the systems in question. Stated differently, under Openforce's own theory of the case, every cause of action against Pickerell would have arisen regardless of whether the October 2023 meeting took place.

10

           **a.**       **Misappropriation Under and Violation of Defend Trade Secrets Act and the Arizona Uniform Trade Secrets Act (Counts I and II) and Unfair Competition (Count VIII)**

Counts I, II, and VIII have nearly identical factual allegations supporting them. Openforce alleges that it is the owner of trade secrets and confidential information related to Openforce's system, which is available only to clients with the necessary login credentials to access them. Doc. 1 ¶¶ 48, 58, 110. Openforce further alleges that Defendants misappropriated and misused such trade secrets and confidential information by:

> (a) on information and belief, receiving Openforce's Trade Secrets and other confidential information that was wrongfully disclosed to them by GigSafe's employees masquerading as independent contractors for Openforce's customers or by pretending to be an administrator with one of Openforce's customers, (b) entering into the MNDA in order to obtain Openforce's Trade Secrets and other confidential information, despite having no intention of a potential corporate transaction with Openforce, (c) retaining those materials, and (d) using them in direct competition with Openforce.

*Id.* ¶¶ 53, 63, 113. GigSafe employees' access of Openforce's system is the crux of the allegations regarding how Pickerell and GigSafe obtained and used Openforce's trade secret and confidential information in violation of the DTSA and AUTSA and in unfair competition with Openforce.

Openforce does not allege that trade secret or confidential information shared at the October 2023 meeting was used by GigSafe employees to access Openforce's system. By contrast, Openforce alleges that the trade secret and confidential information "was wrongfully disclosed to [Pickerell and GigSafe] by GigSafe's employees masquerading as independent contractors for Openforce's customers . . . ," conduct which occurred after the October 2023 meeting with Pickerell. *Id.* ¶ 53. According to the Complaint, GigSafe employees did this through customer-specific activation codes. *Id.* ¶ 25. But the Complaint makes no connection between the use of customer activation codes and the Arizona meeting, as discussed above. Accordingly, Openforce's DTSA, AUTSA, and unfair competition causes of action would have arisen regardless of the October 2023

11

meeting.

### b. Tortious Interference with Contract and Business Expectancy and Unjust Enrichment (Counts III, IV, and IX)

Counts III, IV, and IX have nearly identical factual allegations supporting them. Openforce maintains that it had contractual relationships with Customers A-J specified in its Complaint. *Id.* ¶¶ 68, 76. Openforce alleges that Pickerell and GigSafe interfered with those relationships by directing GigSafe employees to enroll on Openforce's platform as independent contractors for Customers A-J for the purpose of acquiring and using Openforce's trade secrets to create a competing product. *Id.* ¶¶ 71-72, 78-79, 117. Openforce further alleges that Pickerell and GigSafe have been unjustly enriched by such conduct. *Id.* ¶ 117.

The alleged conduct giving rise to Openforce's tortious interference with contract and business expectancy claims has no connection to Defendants' sole contact with Arizona—namely, the October 2023 meeting. Openforce does not allege that these customers were discussed at the meeting, and it does not even mention the October 2023 meeting to support any of these three claims. That is because such conduct could have arisen regardless of the meeting. For example, Openforce maintains that Pickerell and GigSafe "were aware of the obligations Customers A-J owed to Openforce as early as January 2024 [i.e., not at the time of the October 2023 meeting], when GigSafe and Pickerell first directed the GigSafe employees to enroll as independent contractors for any of Customers A-J . . . ." *Id.* ¶¶ 69, 77. Thus, Defendants' alleged knowledge of the relationship or expectancy between Openforce and Customers A-J did not arise until three months after the meeting. Likewise, Defendants' alleged interference—directing GigSafe employees to sign up on Openforce's platform as independent contractors for Customers A-J—did not occur until three months after the meeting. *Id.*

The same can be said for Openforce's unjust enrichment claim. As discussed above, GigSafe allegedly obtained Openforce's trade secret and confidential information

NORTON ROSE FULBRIGHT
US LLP

Attorneys at Law

through its employees' access of Openforce's platform, not at the October 2023 meeting. Likewise, GigSafe allegedly used the information acquired from these enrollments, not the information obtained at the October 2023 meeting, to start a competing platform. Accordingly, Openforce's tortious interference and unjust enrichment causes of action would have arisen regardless of the October 2023 meeting.

### c.  Fraudulent Inducement of a Contract (Count VI)

Openforce alleges that Pickerell and GigSafe misrepresented their interest in a potential corporate transaction and intentionally hid the existence of GigSafe's new business model to induce Openforce to enter into the MNDA. *Id.* ¶¶ 92, 95. GigSafe and Openforce entered into the MNDA on September 7, 2023, a month before the October 2023 meeting with Pickerell—the only alleged contact between Pickerell and Arizona. Thus, any of the alleged misrepresentations would have occurred before the October 2023 meeting. Accordingly, Openforce's fraudulent inducement claim would have arisen regardless of (and have nothing to do with) Pickerell's sole contact with Arizona.

### 3.  The exercise of personal jurisdiction over Pickerell is unreasonable.

Finally, even if the Court finds sufficient minimum contacts between Pickerell and Arizona, the exercise of personal jurisdiction offends traditional notions of fair play and substantial justice and is thus unreasonable. "Even where sufficient minimum contacts are demonstrated, an exercise of personal jurisdiction is constitutional only if it is reasonable." *Hill-Rom*, 2019 WL 5684198, at *5. The Ninth Circuit considers seven factors to determine the reasonableness of exercising personal jurisdiction over a non-resident defendant: (1) the extent of the defendant's purposeful interjection into the forum state; (2) the burden on the defendant in defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Terracom*, 49 F.3d at 561. No one factor is

13

dispositive but all must be weighed. *Id.* The factors weigh in favor of Pickerell due to the lack of alleged conduct specifically attributable to Pickerell and Pickerell's minimal contact with the forum.

First, even if the Court finds sufficient interjection into the state to satisfy the purposeful direction prong, this factor can still weigh against the reasonableness of jurisdiction. *See Dole*, 303 F.3d at 1115. It would be unreasonable to assert jurisdiction over Pickerell—a defendant with a single contact to Arizona, unrelated to the crux of the allegations in this case. This case is ultimately about GigSafe's alleged improper access to Openforce's systems—not Pickerell's conduct as an individual (he is not alleged to have accessed the Openforce system) and certainly not his attendance at the October 2023 meeting. This is hardly enough to establish minimum contacts. To subject Pickerell to this Court's jurisdiction would mean depriving Pickerell of his Constitutionally protected federal due process rights.

Second, the burden on Pickerell in defending this litigation in Arizona is great. Pickerell is located in Austin, Texas, over 1,000 miles away. Openforce alleges that Pickerell visited Arizona only once. Likewise, the evidence against Pickerell related to the alleged conduct is likely to be located in Texas, where Pickerell operates GigSafe. And "[e]ven where the litigation burdens [are] equal, this factor tips in favor of the defendants because the law of personal jurisdiction is primarily concerned with the defendant's burden." *Brown v. Reese*, 2013 WL 525354, at *6 (D. Ariz. Feb. 11, 2013) (finding factor weighed in favor of defendant where defendant was located more than 1,900 miles from Arizona, no evidence that they ever visited the state, and the evidence related to their actions was likely to be located in Georgia).

Third, the extent of conflict with the sovereignty of Texas weighs in favor of Pickerell. Pickerell resides in Texas and operates GigSafe out of Texas. Pickerell's alleged conduct giving rise to this action, i.e., directing GigSafe employees to sign up on Openforce's platform, occurred in Texas. Thus, Texas has an interest in the outcome of

14

this dispute and Texas' sovereignty would be offended by requiring Pickerell to defend a lawsuit here in light of his minimal contact with Arizona.

Fourth, Arizona's interest in adjudicating this dispute against Pickerell is minimal given that all of the alleged conduct, other than a single meeting, occurred outside of the state.

Fifth, the most efficient judicial resolution of the dispute results from litigating in Texas. This "factor focuses on the location of the evidence and witnesses." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998), *holding modified by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006). The instant case primarily involves events occurring in Texas, where Pickerell operates and directs GigSafe employees. Openforce does not allege that any of the named employees, likely to be witnesses in this case, are located in Arizona.

Sixth, the importance of the forum to Openforce's interest in convenient relief is neutral, as "neither the Supreme Court nor [this] court has given much weight to inconvenience to the plaintiff . . . A mere preference on the part of the plaintiff for its home forum does not affect the balancing; indeed, this factor is insignificant in this case." *Brown*, 2013 WL 525354, at *7 (quoting *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1490 (9th Cir. 1993), *holding modified by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006)).

Seventh, the existence of an alternative forum is only weighed if other factors weigh against an exercise of jurisdiction. *Hill-Rom*, 2019 WL 5684198, at *7. The plaintiff bears the burden of proving an alternative forum is not available. *Id.* Texas is an available alternate forum because it recognizes similar causes of actions. *See* Tex. Civ. Prac. & Rem. Code Ann. § 134A.001 (West); *see also Matter of Dallas Roadster, Ltd.*, 846 F.3d 112, 123–24 (5th Cir. 2017) (reciting elements of tortious interference with contract claim and tortious interference with prospective business relations claim under Texas law); *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 277 (5th Cir. 2012) (reciting elements

15

of fraudulent inducement claim under Texas law); *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000) (reciting elements of unfair competition claim under Texas law); *Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N.A.*, 999 F.3d 970, 972 (5th Cir. 2021) (reciting elements of unjust enrichment claim under Texas law). Likewise, the conduct alleged against Pickerell—directing GigSafe employees to access Openforce's systems—would have occurred in Texas, where Pickerell operates and directs GigSafe employees, and is not alleged to have occurred in Arizona.

Accordingly, the factors weigh in favor of a finding that exercising personal jurisdiction over Pickerell is unreasonable, offending traditional notions of fair play and substantial justice.

## V.  CONCLUSION

For the foregoing reasons, Pickerell should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction. Alternatively, the claims against him should be dismissed under Rules 9(b) and 12(b)(6) for failure to state a claim for the reasons set forth in the Motion to Dismiss filed by GigSafe, which is incorporated herein by reference.

16

NORTON ROSE FULBRIGHT
US LLP

Attorneys at Law

| | | |
|---|---|---|
| 1 | Dated: June 30, 2025 | By: */s/ Richard S. Krumholz* |

**Norton Rose Fulbright US LLP**
Richard S. Krumholz (admitted *pro hac vice*)
richard.krumholz@nortonrosefulbright.com
James V. Leito IV (admitted *pro hac vice*)
james.leito@nortonrosefulbright.com
Veronica Portillo Kendrick (admitted *pro hac vice*)
veronica.kendrick@nortonrosefulbright.com
Grey Giddens (admitted *pro hac vice*)
grey.giddens@nortonrosefulbright.com
Mary Katherine Nix (admitted *pro hac vice*)
marykatherine.nix@nortonrosefulbright.com
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201-7932
Telephone:   (214) 855-8000
Facsimile:   (214) 855-8200


**Osborn Maledon, P.A.**
James D. Smith (Arizona Bar No. 016760)
jsmith@omlaw.com
Molly Walker (Arizona Bar No. 038099)
mwalker@omlaw.com
2929 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
Telephone:   (602) 640-9000
Facsimile:   (602) 640-9050

*Attorneys for Defendants Para, Inc. and David Pickerell*

17

**CERTIFICATE OF SERVICE**

I hereby certify that on June 30, 2025, a true and correct copy of the foregoing instrument was served on all counsel of record using the Court's electronic filing system.

I hereby certify that on June 30, 2025, a true and correct copy of the foregoing was served by first-class mail on the Honorable Dominic W. Lanza, United States District Court, Sandra Day O'Connor U.S. Courthouse, Suite 621, 401 West Washington Street, SPC 46, Phoenix, AZ 85003-2151.

**LRCIV 12.1(C) CERTIFICATION**

Under LRCiv 12.1(c), undersigned counsel certifies that Defendants' counsel notified Plaintiff's counsel of the issues raised in the motion to dismiss in an email dated June 20, 2025, followed by a telephonic meet and confer on June 24, 2025, and subsequent email correspondence. The parties could not agree on whether amending the Complaint would cure the deficiencies raised in the motion to dismiss.