**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Contractor Management Services LLC, | No. CV-25-01645-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Para Incorporated, et al., | |
| Defendants. | |
| Para Incorporated, | |
| Counter Claimant, | |
| v. | |
| Contractor Management Services LLC, | |
| Counter Defendant. | |

This is a lawsuit between two direct competitors in the contractor management software industry, Plaintiff/Counter-Defendant Contractor Management Services LLC d/b/a Openforce ("Openforce") and Defendant/Counter-Claimant Para Incorporated d/b/a GigSafe ("GigSafe").[1]  Now pending before the Court is Openforce's motion to stay counterclaim discovery pending resolution of Openforce's motion to dismiss GigSafe's counterclaims.  (Doc. 64.)  For the reasons that follow, the motion is denied.

…

---

[1]    GigSafe's CEO, David Pickerell, is also a defendant.  This order will refer to GigSafe and Pickerell as "Defendants."

**RELEVANT PROCEDURAL BACKGROUND**

On May 14, 2025, Openforce initiated this action.  (Doc. 1.)

On June 30, 2025, Defendants filed a pair of motions to dismiss.  (Docs. 12, 13.) On August 6, 2025, after Openforce filed its responses to those motions (Docs. 15, 16), Defendants filed a motion to stay discovery and postpone the Rule 16(b) scheduling conference until Defendants' motions to dismiss were resolved (Doc. 19), as well as a notice requesting expedited consideration (Doc. 20).

On August 11, 2025, the Court issued an order staying discovery pending the Court's resolution of Defendants' motion to stay.  (Doc. 24.)  On September 2, 2025, the Court granted Defendants' motion to stay discovery pending resolution of Defendants' motions to dismiss (Doc. 32) and thereafter granted in part and denied in part Defendants' motions to dismiss (Doc. 35).

On February 13, 2026, Openforce filed its First Amended Complaint ("FAC"). (Docs. 36, 37.)

On March 6, 2026, Defendants answered the FAC and GigSafe asserted several counterclaims.  (Docs. 49.)[2]

On May 1, 2026, GigSafe filed amended counterclaims.  (Doc. 61.)  That same day, Defendants also served Openforce with Defendants' Second Set of Requests for Production (Doc. 64-2) and GigSafe's Second Set of Interrogatories (Doc. 64-3).

On May 15, 2026, Openforce filed a motion to dismiss GigSafe's counterclaims. (Doc. 63.)  That same day, Openforce filed a motion to stay counterclaim discovery pending resolution of its motion to dismiss GigSafe's counterclaims (Doc. 64) and a notice requesting expedited consideration (Doc. 65).[3]

On May 26, 2026, the parties stipulated, among other things, "that if the Court has

---

[2]    Defendants also moved to dismiss Openforce's fraudulent misrepresentation claim. (Doc. 48.)  The Court is aware of that motion and will rule on it in due course.

[3]    Openforce clarified that it "does not seek a stay with respect to" Interrogatories Nos. 14 and 15 and RFP No. 26 "and intends to respond to them as scheduled and separately from its motion to stay."  (Doc. 65 at 1 n.1.)

not ruled on Openforce's Motion to Stay Counterclaims Discovery (Doc. 64) before June 8, 2026, Openforce's deadline to respond to Defendants' Second Set of Requests for Production and GigSafe's Second Set of Interrogatories (served May 1, 2026) is extended 15 days to July 7, 2026." (Doc. 67 at 1.)  That same day, the Court granted the parties' joint motion and held that "[t]he parties shall abide by their stipulated discovery-related deadlines." (Doc. 68.)

## DISCUSSION

### I.　　The Parties' Arguments

Openforce argues that "[a]ll four factors of whether to stay discovery pending a motion to dismiss support the same outcome from the Court's order on Defendants' previous motion seeking the same relief—a stay of discovery." (Doc. 64 at 7.)  First, Openforce argues that "[n]umerous courts in this circuit and this district find that this first factor favors a stay not just when a pending motion is potentially dispositive of the whole case, but also when it is at least dispositive on the issue on which discovery is sought." (*Id.*, cleaned up.)  Openforce argues that its "allegations target different courses of conduct from GigSafe's allegations" and that "[t]he scope of discovery thus does not materially overlap between (a) Openforce's allegations, which have already cleared the pleadings stage, and (b) GigSafe's allegations, which stand to be dismissed in their entirety by Openforce's motion to dismiss." (*Id.* at 8.)  Openforce then proceeds to outline the at-issue discovery requests and explains why each of them "cover[s] issues separate from Openforce's claims and GigSafe's defenses to them" and "relate[s] exclusively to GigSafe's counterclaim allegations." (*Id.* at 8-9.)  As a result, Openforce argues that its "pending motion to dismiss would be dispositive of all issues on which [it] seeks to stay discovery." (*Id.* at 9.)  Second, Openforce argues that it "has established a clear possibility of success on its motion to dismiss." (*Id.* at 9-11.)  And Openforce emphasizes that if its motion to dismiss GigSafe's counterclaims succeeds, that would "result[] in the full dismissal of GigSafe's counterclaims." (*Id.* at 11.)  Third, Openforce argues that "[n]o additional discovery is needed to resolve [its] motion to dismiss." (*Id.*)  Specifically,

Openforce argues that its "motion to dismiss is presented solely under Rule 12(b)(6) and, where applicable, Rule 9," "presents only legal issues," and "can—indeed must—all be decided based on the four corners of GigSafe's counterclaims; no additional discovery is warranted or allowed on these motions." (*Id.*)  Fourth, Openforce argues that "[a]dditional factors, such as the competitor-versus-competitor nature of this case and the lack of any request for injunctive relief by GigSafe, also support a stay." (*Id.*)  As for the fact that the parties are direct competitors, Openforce raises a concern about "the timeline on which GigSafe has lodged its allegations, what it alleges, and the type of discovery it seeks based on those allegations." (*Id.*)  Openforce argues that "GigSafe attempts to unlock broad discovery" and further argues that GigSafe's discovery requests are "a fishing expedition by a known misappropriator to gain even more access to Openforce's sensitive commercial documents than it already obtained through the wrongful conduct alleged in Openforce's FAC." (*Id.* at 12.)

In response, GigSafe argues that "Openforce's Motion rests on a single flawed premise: GigSafe obtained a stay of discovery last summer while its Motion to Dismiss was pending, so Openforce should get the same relief while its own motion is pending" but that "the situations are categorically different." (Doc. 69 at 1.)  As for the first stay factor, GigSafe argues that "Openforce's Motion to Dismiss targets only GigSafe's counterclaims," and thus, "[r]egardless of the outcome, Openforce's affirmative claims will proceed." (*Id.* at 4.)  GigSafe argues that any comparison to the Court's previous stay order is thus "apples to oranges." (*Id.*)  GigSafe also argues that Openforce's proposal for "a more lenient standard: a stay is appropriate when the pending motion is at least dispositive on the issue on which discovery is sought—even when the rest of the case would survive," is "not supported by case law." (*Id.*, cleaned up.)  Specifically, GigSafe argues that the cases cited by Openforce either (1) decided the discovery stay on the "entire case" standard, or (2) "involved stays of discovery against defendants who would have been eliminated from the litigation entirely had their motions to dismiss been granted." (*Id.* at 4-5.)  GigSafe argues that "the posture here is different" because the "parties will remain exactly

- 4 -

the same regardless of the outcome on Openforce's Motion to Dismiss, and Openforce will continue to press its own affirmative claims no matter what." (*Id.* at 5.)  And GigSafe also argues that "the weight of authority in this Circuit" supports denying a request for a partial stay of discovery such as the one requested by Openforce.  (*Id.* at 5-6.)  Next, GigSafe argues that its "counterclaims share a common factual basis with the claims and defenses that will proceed regardless of Openforce's Motion to Dismiss." (*Id.* at 6.)  GigSafe argues that "[e]ven if [it] voluntarily withdrew its Counterclaims tomorrow, it would not withdraw its discovery requests because each request is relevant to Openforce's affirmative allegations and GigSafe's defenses." (*Id.*)  GigSafe then proceeds to outline the at-issue discovery requests and explains why each has relevance independent of GigSafe's counterclaims.  (*Id.* at 6-8.)  GigSafe argues that the fact "[t]hat [its] discovery requests also bear on its counterclaims does not negate their independent relevance to Openforce's affirmative claims or GigSafe's defenses, which were asserted at the same time as GigSafe's counterclaims" and that "this level of overlap would render Openforce's requested stay unworkable in practice." (*Id.* at 8.)  Specifically, GigSafe argues that "[u]nder Openforce's proposed framework, every discovery request that GigSafe serves will be characterized by Openforce as counterclaim-focused and therefore stayed— effectively shielding it from all inbound discovery" and that "[t]his will inevitably require repeated Court intervention to determine whether the request is covered by the stay." (*Id.* at 9.)  "If, for instance, the Court grants the stay and grants some or all of Openforce's Motion to Dismiss," GigSafe argues that "Openforce will refuse to respond to basic discovery on the basis that the stay ruling confirms that GigSafe's discovery requests are not directed to Openforce's claims" and that "[i]nevitably, this will lead to wasted time and resources on discovery disputes, conferences, and discovery briefing before the Court." (*Id.*)  Next, GigSafe argues that the protective order already in place, and the ongoing discovery already taking place under that protective order, overtakes any competitor-sensitivity concern. (*Id.* at 10.)  GigSafe rejects Openforce's argument that its discovery requests are a "fishing expedition" and argues that its discovery requests are "not limited to GigSafe's

counterclaims" and "GigSafe is entitled to discovery concerning the conception, development, and technical details of the product it allegedly copied—not to gain a competitive advantage, but to defend against Openforce's claims." (*Id.*) GigSafe argues that "[s]uch discovery answers numerous core questions presented by Openforce's claims, including whether there is any cognizable overlap in the conception or development of Openforce's and GigSafe's products, whether one is truly a 'copycat' of the other, whether any protectable trade secret exists, whether GigSafe's product differed in its development and implementation, and whether there was a legitimate basis for Openforce's lawsuit in the first place." (*Id.*) Next, GigSafe argues that when Defendants moved to stay discovery pending resolution of their motions to dismiss, "Openforce had already filed its opposition," whereas now, "GigSafe is not in the same position, as it has not yet responded to Openforce's Motion to Dismiss." (*Id.*) Thus, GigSafe argues that "the Court cannot meaningfully evaluate the likelihood of that Motion's success." (*Id.* at 12.) Last, GigSafe emphasizes that "[t]he Court acknowledged in its prior Order that other courts have questioned the utility of the second factor and at times disregarded it entirely." (*Id.*)

In reply, Openforce argues that "GigSafe concocts strained theories of relevance between these counterclaim discovery requests and its defenses to Openforce's original claims." (Doc. 70 at 1.) Openforce argues that "GigSafe's core legal argument—*i.e.*, that a motion to dismiss justifies a discovery stay *only* when the motion may dispose of the entire case—is wrong." (*Id.*) Openforce also argues that "GigSafe sets a false dichotomy" and "[e]ven though Openforce's motion to dismiss may not eliminate *a party* from the case, it would do more by eliminating *entire issues* from the case." (*Id.* at 2.) Openforce then argues at length why "the cases that Openforce cites in its motion to stay apply with full force" but "[t]he cases that GigSafe cites, by contrast, are irrelevant." (*Id.*) And Openforce emphasizes that "the applicable standard permits a discovery stay when a pending motion is at least dispositive on *the issue* at which discovery is aimed." (*Id.* at 3, cleaned up.) Openforce also argues that "numerous cases grant a stay of discovery when a motion to dismiss would not dispose of the entire case or eliminate a party." (*Id.*) Next, Openforce

argues that "[t]he to-be-stayed discovery targets GigSafe's counterclaims," and Openforce characterizes GigSafe's argument "that its counterclaim discovery requests are also relevant to Openforce's claims and GigSafe's defenses to them" as "a square peg in a round hole." (*Id.* at 4.) Openforce then proceeds to re-outline the at-issue discovery requests and argues why each of them relates only to GigSafe's counterclaims. (*Id.* at 4-9.) Next, Openforce argues that "the requested partial stay would reduce burden on the parties and the court" and that "GigSafe's counterclaim discovery is readily severable from discovery on Openforce's claims." (*Id.* at 9, cleaned up.) Openforce also rejects "GigSafe's professed fear that Openforce 'will refuse to respond to basic discovery on the basis that the stay ruling confirms that GigSafe's discovery requests are not directed to Openforce's claims,'" arguing that "GigSafe makes no allegation that Openforce has refused to respond to 'basic discovery'" and that "this Court's order on this motion would provide clear guidance to the parties on what discovery topics the Court considers limited to GigSafe's counterclaims versus not." (*Id.*, citing Doc. 69 at 9.) Next, Openforce argues "[t]he fact that the Court has now entered a protective order does not change the Court's prior observation, in granting GigSafe's motion to stay discovery, that a 'protective order does not always fully eliminate the sort of concerns' regarding the production of commercial sensitive information, 'particularly in litigation between "direct competitors."'" (*Id.* at 10, citing Doc. 32 at 5.) Openforce argues that "[w]hile GigSafe argues that *some* commercially sensitive information will be exchanged regardless of the outcome on Openforce's motion to dismiss, it ignores that Openforce's motion to dismiss will impact the *scope* of commercially sensitive information to be exchanged" and that "outside of GigSafe's counterclaims, there would be no reason for Openforce to give the commercially sensitive requested documents related to the technology and development of its systems to its competitor, who has admitted to accessing its systems." (*Id.*) Openforce argues that "[r]emoving GigSafe's counterclaims from the equation, there is no similar need to assess Openforce's source code or entire platform—discovery into the trade secrets that GigSafe misappropriated will be enough to assess Openforce's claims, including whether GigSafe

indeed created a copycat product based on those trade secrets." (*Id.*) Last, Openforce argues that "a partially briefed motion to dismiss gives the Court a sufficient 'preliminary peek' to assess whether the motion to dismiss" is likely to succeed, and, at any rate, "Openforce's motion to dismiss will be fully briefed in just over two weeks, and with a temporary extension of Openforce's deadline to respond to the counterclaim discovery, the Court [can] decide this motion after a 'preliminary peek' at that full briefing." (*Id.* at 11.)

II.      Analysis

"Courts have traditionally looked unfavorably upon blanket stays of discovery while Rule 12 motions are pending." *Espinoza v. Trans Union LLC*, 2023 WL 3994846, *2 (D. Ariz. 2023) (citation omitted). "A party seeking a stay of discovery carries the heavy burden of making a 'strong showing' why discovery should be denied." *Id.* (citation omitted). "The moving party must show more than an apparently meritorious 12(b)(6) claim." *Id.* (cleaned up).

In the order granting a stay of discovery pending the resolution of Defendants' motions to dismiss, the Court acknowledged that "obtaining such a stay is not impossible, and district courts often 'employ a three-prong test to determine whether a stay is appropriate: 1) the pending dispositive motion must be potentially dispositive of the entire case; 2) the court must either be convinced that the dispositive motion will be granted, or the court must find that a clear possibility exists that the dispositive motion will be granted; and 3) the court must be able to resolve the dispositive motion without any additional discovery." (Doc. 32 at 2, quoting *Cebrynski v. Wells Fargo Bank NA*, 2022 WL 2290561, *1 (D. Ariz. 2022).)

A.      **Second And Third Factors**

The second and third factors weigh in favor of a discovery stay pending resolution of Openforce's motion to dismiss GigSafe's counterclaims. As for the second factor, although courts have not always considered this factor (*id.* at 2-3 n.3), the Court considers it here. The second factor "requires the court to take a 'preliminary peek' at the merits of the pending dispositive motion. To be entitled to a discovery stay, the moving party must

show there is an immediate and clear possibility of success on its motion." *Cebrynski*, 2022 WL 2290561 at *1 (cleaned up). "[C]ourts sometimes assess the merits of a motion before it is fully briefed." *Litton v. Roblox Corp.*, 2025 WL 2373343, *1 (N.D. Cal. 2025). *See also Ledwidge v. Fed. Deposit Ins. Corp.*, 2025 WL 885845, *3 (N.D. Cal. 2025) (granting motion to stay discovery even though the court "ha[d] not yet had the benefit of receiving" plaintiff's opposition brief). The Court has now taken a "preliminary peek" at the motion to dismiss, which reveals that Openforce has raised an array of developed, non-frivolous challenges to GigSafe's counterclaims. As the Court has previously observed, "[t]his is unsurprising, given the quality of the lawyers and the nature of the lawsuit (*i.e.*, high-stakes business litigation)." (Doc. 32 at 3.) Based on this "preliminary peek," Openforce has established a "clear possibility" of success for purposes of the second factor.

The third factor also supports the issuance of a stay. As Openforce notes, its "motion to dismiss is presented solely under Rule 12(b)(6) and, where applicable, Rule 9. It presents only legal issues that do not require resolution of any fact questions or any discovery to resolve. These issues . . . can—indeed must—all be decided on the four corners of GigSafe's counterclaims; no additional discovery is warranted or allowed on these motions." (Doc. 64 at 11.) *See also Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir. 1984) ("[T]he district court did not abuse its discretion in staying Rae's discovery pending resolution of the Rule 12(b) motion" because "[t]here were no factual issues" and "[t]he district court took all the facts alleged in the complaint as true").[4]

---

[4] Openforce argues that the parties' status as direct competitors is an additional factor that supports a stay on counterclaim discovery. (Doc. 64 at 11-12.) The Court has previously observed "that courts should be particularly wary of allowing discovery to proceed, during the pendency of a non-frivolous and potentially case-dispositive motion to dismiss, in a case where the parties are competitors and expect that commercially sensitive documents will be exchanged." (Doc. 32 at 4, cleaned up.) The Court further observed that "[p]utting aside that the parties have not yet agreed to a protective order (and it is speculative whether they will ultimately do so), the Court's experience is that a protective order does not always fully eliminate the sort of concerns that Defendants have raised here, particularly in litigation between 'direct competitors.'" (*Id.* at 5.) However, those observations came at a stage in this case where no protective order had yet been issued. At this stage, a protective order is in place (Doc. 47) and discovery has been ongoing under that protective order for months seemingly without any issues. Openforce has provided no argument why the protective order that is currently in place would not, at the very least, ameliorate any concerns about the exchange of sensitive business information between these two competitors. Moreover, the Court's prior observation came at a stage in this case

### B.    First Factor

The crux of the parties' dispute relates to the first factor.  As a preliminary matter, the parties disagree as to whether the first factor can only be met if the underlying motion would be dispositive of the entire case.  Several courts within the Ninth Circuit, including this Court and others in this district, have disagreed with that premise.  *See, e.g.*, *Dobson v. C R Bard Inc.*, 2024 WL 6841389, *1 (D. Ariz. 2024) ("While the Ninth Circuit has not set forth a clear standard for determining when it is appropriate to stay discovery, district courts in this circuit have applied a two-part test.  Under this test, the pending motion must be potentially dispositive of the entire case *or at least dispositive on the issue on which discovery is sought*.  The court must also determine whether the motion can be decided without additional discovery.  If the moving party satisfies both prongs, a stay may issue.  Otherwise, discovery should proceed.") (cleaned up) (emphasis added); *Williams v. Experian Info. Sols. Inc.*, 2024 WL 739676, *2 (D. Ariz. 2024) (same); *Michael v. FCA US LLC*, 2022 WL 3598249, *2 (D. Ariz. 2022) (same); *DRK Photo v. McGraw Hill Companies, Inc.*, 2012 WL 5936681, *1 (D. Ariz. 2012) (same); *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 602 (D. Nev. 2011) (same); *Mlejnecky v. Olympus Imaging Am., Inc.*, 2011 WL 489743, *6 (E.D. Cal. 2011) (same).  Thus, to the extent GigSafe argues that the first factor is not met solely because Openforce's motion to dismiss will not dispose of the entire case (Doc. 69 at 4), that argument is without merit.[5]

GigSafe also argues that the cases cited by Openforce in support of this more lenient standard are distinguishable.  For example, GigSafe argues that "although *Dobson* quoted both standards, it granted a discovery stay on the 'entire case' standard" and "*Dobson* therefore does not support an issue-specific stay of discovery where the rest of the case

---

where Defendants' motions to dismiss would have disposed of the entire case, making discovery in its entirety possibly unnecessary.  By contrast, Openforce's motion to stay counterclaim discovery does not alter the fact that discovery (including discovery of sensitive business information) would be ongoing in this case on Openforce's affirmative claims and Defendants' affirmative defenses irrespective of any stay on counterclaim discovery.

[5]    To be fair, the argument for granting a stay is stronger if the underlying motion would dispose of the entire case, but that is not the only way the first factor can be satisfied.

survives." (Doc. 69 at 4-5.) And GigSafe argues that *Corbett v. Pub. Employees' Ret. Sys. ex rel. Nevada*, 2021 WL 297564 (D. Nev. 2021), and *Underwood v. O'Reilly Auto Enters., LLC*, 2023 WL 1795857 (D. Nev. 2023), are distinguishable because "[b]oth cases involved stays of discovery against defendants who would have been eliminated from the litigation entirely had their motions to dismiss been granted" whereas the "parties will remain exactly the same regardless of the outcome on Openforce's Motion to Dismiss." (*Id.* at 5.) GigSafe also argues that "the weight of authority in this Circuit runs in the opposite direction." (*Id.*, citing *Est. of Evans v. Kinecta Fed. Credit Union*, 2014 WL 12790972, *2 (D. Nev. 2014) ["Staying discovery when a pending dispositive motion challenges fewer than all claims or does not apply to all defendants is rarely appropriate."].) Although the Court agrees that the relevant caselaw largely addresses whether the entire case and/or entire parties would be dismissed from the case, there is at least some authority that supports the issuance of a discovery stay where a pending motion is at least likely to be dispositive of certain claims. *See, e.g.*, *WalkMe Ltd. v. Whatfix, Inc.*, 2024 WL 2788451, *1-2 (N.D. Cal. 2024) (granting partial stay on discovery as to only certain claims against a single defendant because "the motion would be dispositive of the issues at which discovery would be directed"). *Cf Mireskandari v. Daily Mail and Gen. Tr. PLC*, 2013 WL 12129944, *4 (C.D. Cal. 2013) ("Defendants' anti-SLAPP motion is potentially dispositive of all but one plaintiff's fourteen claims. . . . A preliminary look at the merits of the motion suggests there is a possibility it will be granted at least as to certain claims. . . . Defendants have made a strong showing that they are likely to succeed on the merits as respects several of plaintiff's claims. . . . The court concludes, therefore, that the nature of the motion, defendants' likelihood of success on the merits, the posture and stage of the litigation, and the goal of efficiency weigh in favor of granting a stay.").

Nevertheless, the Court ultimately agrees with GigSafe that a stay is unwarranted here because (1) "GigSafe's counterclaims share a common factual basis with the claims and defenses that will proceed regardless of Openforce's Motion to Dismiss"; (2) several of the at-issue discovery requests are "relevant to Openforce's affirmative allegations and

- 11 -

GigSafe's defenses"; and (3) the "level of overlap" between GigSafe's counterclaims and Openforce's affirmative claims and Defendants' affirmative defenses to those claims "render[s] Openforce's requested stay unworkable in practice." (Doc. 69 at 6, 8.)

In *Edwards Vacuum, LLC v. Hoffman Instrumentation Supply Inc.*, 2021 WL 12318990 (D. Or. 2021), the plaintiff, Edwards, brought claims against HIS and six HIS employees for "misappropriation of trade secrets, in violation of both the Defend Trade Secrets Act, 18 U.S.C. § 1836(b), and the Oregon Uniform Trade Secrets Act, Or. Rev. Stat. § 646.461; breach of contract; tortious interference with economic relations; conversion; breach of the duty of loyalty; and unjust enrichment." *Id.* at *1. HIS "assert[ed] counterclaims alleging monopolization and attempted monopolization, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2; and breach of contract." *Id.* Edwards moved to bifurcate HIS's counterclaims and stay discovery on those counterclaims. *Id.* The court denied Edwards's motion to bifurcate as "premature." *Id.* at *2. The court also denied Edwards's request to stay discovery on the counterclaims. *Id.* at *3. The court gave several reasons for denying the stay. "First, Edwards ha[d] not yet even filed a motion to dismiss HIS's counterclaims," such that the court could not "evaluate the potential strength or weakness of any motion that may be filed." *Id.* at *2. Second, the court held that a single trial on all claims was still possible and did not want that "foreclose th[at] option." *Id.* Third, and importantly here, the court held that a stay of counterclaim discovery would be "unworkable in practice" because "[s]taying discovery regarding HIS's counterclaims while allowing, as the [c]ourt must, discovery to proceed regarding HIS's affirmative (and negative) defenses against Edwards's claims would likely exponentially increase the discovery disputes among the parties. Although not completely coextensive, there appears to be significant overlap between discovery relating to Edwards's claims and discovery relating to HIS's counterclaims, including its antitrust counterclaims. If a stay were granted, the Court anticipates Edwards arguing that HIS may not engage in certain discovery that Edwards resists, while HIS would respond that the requested discovery was

needed to defend against Edwards's claims." *Id.* at *3.[6]

The Court has similar concerns here because common facts and evidence underlie GigSafe's counterclaims, Openforce's affirmative claims, and Defendants' affirmative defenses to those claims. The Ninth Circuit has "recognized that the scope of permissible

---

[6]     Openforce argues that *Edwards Vacuum* actually supports a stay on counterclaim discovery. (Doc. 70 at 3.) Openforce argues that after the *Edwards Vacuum* court "denied a request to stay discovery on counterclaims where the plaintiff had not even filed a motion to dismiss and where the court perceived 'significant overlap' between the plaintiff's claims and the defendant's counterclaims," "the plaintiff sought reconsideration of that order, which the court granted" and "held that discovery could proceed on a counterclaim for breach of contract but stayed discovery on antitrust claims." (*Id.*) Openforce argues that, on reconsideration, "[t]he court reasoned that the antitrust counterclaims would have required burdensome discovery on whether the plaintiff had engaged in sham litigation or created an improper monopoly—discovery the court described as 'both expensive and intrusive' and possibly 'completely unnecessary.'" (*Id.*) Openforce argues that "[t]he resemblance to this situation is uncanny: one of GigSafe's counterclaims is premised on the allegation that Openforce is liable for 'intentionally fil[ing] this bad faith lawsuit,' much like the *Edwards Vacuum* defendant premised its stayed antitrust counterclaims on allegations of sham litigation." (*Id.*, citing Doc. 61 ¶ 70.) There are several reasons why the reconsideration order in *Edwards Vacuum* is inapposite. First, the court's reconsideration—which stayed discovery on HIS's antitrust counterclaims—came *after* the court resolved Edwards's motion to dismiss those counterclaims. *Edwards Vacuum, LLC v. Hoffman Instrumentation Supply, Inc.*, 556 F. Supp. 3d 1156, 1165-79 (D. Or. 2021) (first addressing the motion to dismiss). In other words, the Court did not stay discovery on the counterclaims pending resolution of the motion to dismiss, as Openforce seeks here. Moreover, the court was clear that, following resolution of the motion to dismiss, "all that remain[ed] of HIS's antitrust counterclaims [was] HIS's contention that Edwards engaged in anticompetitive conduct by filing an objectively baseless lawsuit." *Id.* at 1180. By contrast, GigSafe's counterclaims are not solely premised on Openforce's alleged bad-faith filing of this case. Second, on reconsideration, the court stayed discovery on the antitrust counterclaims *because it was also bifurcating those claims*. *Id.* at 1179. The court specifically held that "[c]ourts routinely bifurcate antitrust claims from complex legal issues such as intellectual property and unfair competition claims." *Id.* (citation omitted). Openforce has made no request to bifurcate GigSafe's counterclaims. Although a stay on discovery for bifurcated claims may make sense where the bifurcated claims lack factual overlap with the remaining claims, such a discovery stay is often inappropriate if (1) no bifurcation is ordered, or (2) the bifurcated claims have factual overlap with the remaining claims. *Malibu Boats, LLC v. MasterCraft Boat Co., LLC*, 2016 WL 8317032, at *2 (E.D. Tenn. 2016) ("Because the Court has decided against bifurcation of the antitrust counterclaim, it would be inappropriate to stay discovery on that counterclaim. In addition, the Court notes that even in many of the instances where a court chose to bifurcate patent and antitrust issues, the court did not stay discovery on the antitrust issues. . . . Considering that the Court is not inclined to bifurcate the issues at this juncture, and considering also the interconnectedness of the patent and antitrust issues, it will also decline to stay discovery on the antitrust issues."). For those same reasons, the *Edwards Vacuum* court held on reconsideration that "if discovery is otherwise properly related to the prosecution or defense of any of Edwards's claims or HIS's breach of contract counterclaim, that discovery may proceed, even if it also may be relevant to HIS's antitrust counterclaims." 556 F. Supp. 3d at 1180. As discussed in greater detail below, the Court finds there is factual and evidentiary overlap between Openforce's affirmative claims, Defendants' affirmative defenses, and GigSafe's counterclaims.

discovery under Rule 26 is broad," *Republic of Ecuador v. Mackay*, 742 F.3d 860, 866 (9th Cir. 2014) (cleaned up), and "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1).  Several of the at-issue discovery requests, although appearing to be most relevant to GigSafe's counterclaims, also appear to seek information that is potentially relevant to Openforce's affirmative claims and GigSafe's defenses to those claims.  For example, Requests for Production ("RFPs") Nos. 18, 20, 22, 24, and 27 (Doc. 64-2 at 11-13) seek, in broad strokes, documents regarding Openforce's alleged access to GigSafe's information, including through GigSafe/Para employees.  Although these requests are most relevant to GigSafe's counterclaims, they also broadly appear to be potentially relevant to Openforce's claim throughout the FAC that GigSafe created a "copycat" platform of Openforce's platform.  (Doc. 37 ¶¶ 2, 6, 18, 39.)  If, for example, *Openforce's* platform used elements or information from *GigSafe's* platform, that would tend to undermine Openforce's claim that GigSafe's platform is a "copycat" of Openforce's.

As another example, Interrogatory ("ROG") No. 13 (Doc. 64-3 at 11) and RFP No. 23 (Doc. 64-2 at 12) seek, in broad strokes, documents and information related to Openforce's communications with its customers regarding GigSafe, Pickerell, or this lawsuit.  These requests have potential relevance to Openforce's allegations in the FAC that its customers left Openforce to go to GigSafe.  (*See, e.g.*, Doc. 37 ¶¶ 41-46.)  Similarly, RFP No. 25 seeks "Documents sufficient to identify all actual or potential customers, vendors, investors and/or business partners that Openforce has solicited with respect to any Openforce Product."  (Doc. 64-2 at 12.)  This request, too, has potential relevance to Openforce's allegations that its customers, *and* its potential customers, were poached by GigSafe.  (*See, e.g.*, Doc. 37 ¶¶ 41-46.)

As yet another example, ROG No. 8 provides: "If You contend that the Publicly Available Information identified in GigSafe's Counterclaims [Doc. 49] is different from the information (a) You allege was shared with Pickerell and GigSafe pursuant to the

MNDA and/or (b) You allege was accessed by Pickerell and GigSafe through the Openforce System, describe the differences; if You contend that there is only partial overlap, describe the extent of the overlap and the difference." (Doc. 64-3 at 10.) Although this ROG explicitly references GigSafe's counterclaims, this ROG also seeks information that might undermine Openforce's claim of trade secret misappropriation—if the alleged trade secrets are publicly available, they would not qualify as trade secrets. Indeed, § 1(a) of the parties' Mutual Non-Disclosure Agreement ("MNDA")—which Openforce alleges was breached (Doc. 37 ¶ 86-95)—defines "Confidential Information" as "certain non-public information" (Doc. 35 at 31.) If the information disclosed by Openforce to GigSafe pursuant to the MNDA was entirely public information, that would tend to undermine Openforce's claim of breach of the MNDA.

As yet another example, ROG No. 9 (Doc. 64-3 at 10) and RFPs Nos. 19 and 21 (Doc. 64-2 at 11-12) generally seek documents and information related to any media statements Openforce has made about GigSafe, Pickerell, or this lawsuit. Although these requests appear most relevant to GigSafe's counterclaims, the requested information also has potential relevance to Openforce's affirmative claims. If, for example, Openforce has made statements in the media about GigSafe or this lawsuit that are inconsistent with the positions it now takes in this lawsuit, that may be relevant to GigSafe's defense against Openforce's affirmative claims.

Many courts, in addition to the above-cited authorities, have concluded that where, as here, there is factual and evidentiary overlap between claims, a partial stay of discovery is inefficient and unworkable. *See, e.g.*, *X Corp. v. Bright Data Ltd.*, 782 F. Supp. 3d 770, 783 (N.D. Cal. 2025) ("X Corp.'s motion to stay or bifurcate discovery on the counterclaims, which overlaps with discovery on the affirmative defenses and other issues in this case, is DENIED."); *Liberty Mut. Pers. Ins. Co. v. Winters*, 2024 WL 86871, *1 (N.D. Miss. 2024) ("Granting a stay of discovery as to the Counterclaim only would hinder all discovery and could potentially create unnecessary complications down the road, such as necessitating retaking depositions in the event the motion to dismiss is denied."). *Cf*

*Westfield Ins. Co. v. Sisterville Tank Works, Inc.*, 2018 WL 11693228, \*3 (N.D. W. Va. 2018) ("Even though, defendant Sisterville's Counterclaim has slightly different claims, including the additional Unfair Trade Practices Act claim, it would not be efficient to stay discovery of the Counterclaim's issues while this Court has already denied to stay the discovery of the claims against the Third-Party Defendants.  It would make matters more complex and convoluted if this Court stayed parts of discovery while allowing discovery on others.  Allowing discovery to go forward as scheduled allows for the parties to avoid undertaking duplicitous discovery and to work towards being more informed to participate in settlement negotiations or other resolutions.  It also lessens the burden on this Court because there will be overlap of evidence and witnesses.  Additionally, if the coverage issue is resolved in favor of there being coverage for the claims, then the other claims could be considered more expeditiously instead of having to start discovery on those issues and prolonging this case even further.").  It is evident that there will be significant overlap in evidence and witnesses between Openforce's affirmative claims and GigSafe's counterclaims.  For example, GigSafe's counterclaims allege that "[t]he only confidential and proprietary trade secrets shared at the October 2023 [in-person] meeting were [GigSafe's], not Openforce's."  (Doc. 61 at 24 ¶ 36.)  This allegation directly contradicts Openforce's allegations that the trade secrets and confidential information shared at that meeting belonged to Openforce.  (Doc. 37 ¶¶ 3, 32.)  Discovery into what was shared at that meeting pursuant to the MNDA is bound to overlap substantially.  As another example, Mr. Fierro signed the MNDA that is the basis of Openforce's breach of contract claim (Doc. 1-1 at 3; Doc. 61 at 19 ¶ 20) and is also alleged in GigSafe's counterclaims to have left GigSafe for Openforce and to have shared GigSafe's confidential information with Openforce (Doc. 61 at 20 ¶ 26, 30-31 ¶ 46, 34 ¶¶ 53, 54.)  Thus, staying discovery on only the counterclaims runs the risk of having Mr. Fierro deposed twice.  *Liberty Mut. Pers. Ins. Co.*, 2024 WL 86871 at \*1 (considering the risk of having to retake depositions if a stay was granted).  This type of inefficiency counsels against Openforce's requested stay.

Last, the Court has concerns that, should it grant Openforce's requested stay, the

inevitable result will be discovery disputes between the parties as to whether particular discovery requests are counterclaim-only requests. *Edwards Vacuum*, 2021 WL 12318990 at *3 (agreeing with the defendant that a stay of discovery only on the counterclaims would be "unworkable in practice" because "[s]taying discovery regarding [the defendant's] counterclaims while allowing, as the Court must, discovery to proceed regarding [the defendant's] affirmative (and negative) defenses against [the plaintiff's] claims would likely exponentially increase the discovery disputes among the parties"). *Cf. Commure, Inc. v. Canopy Works, Inc.*, 2025 WL 1150695, *6 (N.D. Cal. 2025) ("The Court is not persuaded that Canopy should be prevented from obtaining discovery related to its other counterclaims and affirmative defenses, even if they happen to overlap with its trade secret misappropriation counterclaims. In any event, the Court discerns no clear line between discovery related exclusively to trade secrets and discovery related to other matters, such as Canopy's breach of contract counterclaim. This case has been pending for almost a year, and the Court has no desire to invite disputes regarding whether discovery is 'trade secret-related' or not.").

Accordingly,

**IT IS ORDERED** that Openforce's motion to stay counterclaim discovery (Doc. 64) is **denied**.

Dated this 10th day of June, 2026.

Dominic W. Lanza
United States District Judge